UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MARK JERVIS, | ) | |
| Petitioner, | ) ) ) | |
| vs. | ) ) | No. 2:16-cv-0031-WTL-MJD |
| RICHARD BROWN, Superintendent, | ) ) ) | |
| Respondent. | ) | |

### Entry Discussing Petition for Writ of Habeas
### Corpus and Denying Certificate of Appealability

Once convicted and after exhaustion or waiver of any right to appeal, a defendant is presumed to stand "fairly and finally convicted." *United States v. Frady,* 456 U.S. 152, 164 (1982). For the reasons explained in this Entry, the effort of Mark Jervis to show otherwise fails. His petition for a writ of habeas corpus will therefore be denied. In addition, the Court finds that a certificate of appealability should not issue.

### Background

After his first trial resulted in a hung jury, an Indiana jury found Jervis guilty of the August 1993 murder of Terri Boyer in Newburgh, Indiana. He is currently serving the 60-year sentence imposed for that offense. Jervis now challenges his conviction, contending that he was denied the effective assistance of counsel both at trial and in his direct appeal.

The circumstances associated with Jervis's offense and prosecution were described by the Indiana Supreme Court in his direct appeal:

On August 14, 1993, Terri Boyer went on a drinking spree with her husband, her brother and the brother's girlfriend. The four began in the early afternoon in Hatfield, their home town, and took the brother's truck to visit several bars, the last in Newburgh. In Newburgh, Boyer and her husband got into an argument that resulted in Boyer leaving the truck. The other three drove back to Hatfield, leaving an intoxicated Boyer to fend for herself. Just before 10 p.m. Boyer found her way to Frenchie's, a tavern in Newburgh, where she asked several patrons to give her a ride back to Hatfield. All refused. At some point, defendant Jervis entered the bar, met Boyer, and offered to take her to Hatfield. The two had no prior acquaintance.

Jervis and Boyer were seen leaving the bar together some time around midnight, but no one actually saw them drive away in Jervis's car. Witness Terry Timberlake testified that he saw a car resembling Jervis's station wagon pull into the Newburgh Cinema parking lot around 11:30 p.m. Timberlake stated that two people, one male and one female, appeared to be in the car, but he could not positively identify them as Jervis and Boyer. Approximately thirty minutes later, Timberlake saw the station wagon leave the Cinema parking lot and park in an adjacent lot of a daycare center where it remained for about ten minutes. It then returned to the Cinema parking lot, and finally drove away. Jervis returned to Frenchie's alone around 12:30 to 1:30 a.m. the same night, telling those present that he was unable to take Boyer to Hatfield because his car had broken down. Jervis went home a half hour later. At approximately 12:30 p.m. the next day, the owner of Newburgh Cinema found Boyer's body on a grass strip next to the Cinema parking lot. Boyer was nude below her waist and her bra and shirt were pushed up to her shoulders. An autopsy concluded that Boyer had been strangled and had died around midnight.

On September 5, 1993, Jervis was charged [ ] with Boyer's murder. The State's case against Jervis was largely circumstantial and included the following evidence: (1) an envelope, pencil and pen Boyer had been carrying in her purse were found in Jervis's trash can outside his apartment; (2) Boyer's driver's license and her daughter's library card were found in Jervis's car; and (3) DNA evidence established a strong likelihood that a blood stain on Jervis's shirt and a pubic hair found on his pants were Boyer's. Several witnesses also testified as to Jervis's whereabouts on the night in question. The jury was unable to reach a verdict in Jervis's first trial in 1994. The State retried Jervis in 1995 and a second jury convicted him.

*Jervis v. State,* 679 N.E.2d 875, 876–77 (Ind. 1997)("*Jervis I*"). Jervis's conviction at the second trial was affirmed on appeal, *id.,* and the trial court's denial of his action for post-conviction relief was likewise affirmed. *See Jervis v. State,* 28 N.E.3d 361 (Ind.Ct.App. 2015)("*Jervis II*").

## Discussion

Jervis seeks relief pursuant to 28 U.S.C. § 2254(a). "[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). Jervis's habeas petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

> Recognizing that state courts are no less experienced than federal courts in dealing with claims of ineffective assistance of counsel, *Burt v. Titlow,* 571 U.S. ——, 134 S. Ct. 10, 15–16, 187 L.Ed.2d 348, 2013 WL 5904117 at *4 (U.S. Nov. 5, 2013), federal law erects a high deferential standard . . . for claims that a state court erred. Federal habeas relief is available only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2); *see also Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013).

*Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013). The decision made by a state court is deemed to be contrary to clearly established federal law "'if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Emerson v. Shaw,* 575 F.3d 680, 684 (7th Cir. 2009)(quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002)). The decision by a state court is deemed to involve an unreasonable application of clearly established federal law "'if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case.'" *Emerson,* 575 F.3d at 684 (quoting *Bell,* 535 U.S. at 694). "Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence."

*Goudy v. Basinger,* 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes,* 334 F.3d 696 (7th Cir. 2003)).

As explained by the Supreme Court, the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *see also Miller–El v. Cockrell,* 537 U.S. 322, 337 (2003) ("Statutes such as AEDPA have placed more, rather than fewer, restrictions on the power of federal courts to grant writs of habeas corpus to state prisoners."). "The petitioner carries the burden of proof." *Cullen v. Pinholster,* 131 S. Ct. 1388, 1398 (2011).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015)(quotation marks and citations omitted). The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

Jervis's habeas petition presents the familiar claim that he was denied the effective assistance of counsel. *United States v. Farr,* 297 F.3d 651, 658 (7th Cir. 2002)("We have observed in the past that criminal defendants frequently 'demonize' their lawyers. If we are to believe the briefs filed by appellate lawyers, the only reasons defendants are convicted is the bumbling of their predecessors. But lawyers are not miracle workers. Most convictions follow ineluctably from the defendants' illegal deeds.").

The specifications of ineffective assistance of counsel were asserted in Jervis's action for post-conviction relief. In rejecting Jervis's arguments, the Indiana Court of Appeals properly recognized that the governing Supreme Court case for resolving an ineffective assistance claim is *Strickland v. Washington,* 466 U.S. 668 (1984). *Jervis II,* 28 N.E.3d at 365. Thus,

> "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).

*Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014) (parallel citations omitted). The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686.

When the deferential AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is . . . difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*] at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not

whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The Indiana Court of Appeals fielded these specifications of ineffective assistance of trial counsel: (1) counsel failed to recommend that Jervis accept the State's plea deal; (2) counsel failed to object to the introduction of forensic evidence; (3) counsel failed to move for mistrial due to jury bias when the trial court had excused a juror who had reported concern about his wife's welfare in a rural area; and (4) trial counsel was ineffective for failing to file a motion to dismiss after his first trial.

The first of these contentions was evaluated in the following terms:

> Jervis fails to establish that he would have accepted the State's plea deal. Moreover, it is also obvious from the transcript excerpt that the trial court would not have accepted Jervis's guilty plea over his protestation of innocence. Because Jervis has failed to show that he would have accepted the plea deal, and the fact that there is sufficient showing that the trial court would not have accepted Jervis's guilty plea, Jervis's claim of prejudice fails.

*Jervis II,* 28 N.E.3d at 367.

The second specification of ineffective assistance of counsel was rejected because Jervis failed to support it with cogent argument. *Id.* at 368.

The third specification of ineffective assistance of counsel was rejected on the basis of *res judicata,* meaning in this case that Jervis's challenge to the juror bias issue had been considered and rejected in his direct appeal. Because no error was found in the direct appeal, there was no merit in the "repackaged" iteration as an ineffective assistance of counsel claim in *Jervis II. Id.* at 368-69.

The fourth specification of ineffective assistance of counsel rests on Jervis's argument that a motion to dismiss would have been successful. The Indiana Court of Appeals rejected the claim because Jervis failed to support it with a cogent argument. *Id.* at 366 n.1.

Jervis also argued in *Jervis II* that he had been denied the effective assistance of counsel in *Jervis I*. Because of the lack of merit to the claims which had been asserted, however, the Indiana Court of Appeals found that Jervis had failed to show either deficient performance or prejudice from that representation. *Id.* at 369.

As to each of the ineffective assistance of counsel claims fairly presented to the Indiana state courts or otherwise properly available for federal habeas review, the Indiana Court of Appeals recognized and identified the governing standard, as determined by the Supreme Court of the United States, "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). And because it was a reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011). His habeas claims do not support the relief he seeks here. *Stern v. Meisner*, 812 F.3d 606, 610 (7th Cir. 2016) ("In other words, [the habeas petitioner] must show a complete absence of reasonableness in the [state] appellate court's decision.") (citing *Harrington,* 562 U.S. at 98).

**Conclusion**

This Court has carefully reviewed the state record in light of Jervis's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. "A defendant whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381,

1388 (7th Cir. 1997). No such established rules entitle Jervis to relief in this case. Jervis's petition for a writ of habeas corpus is therefore denied. Judgment consistent with this Entry shall now issue.

**Certificate of Appealability**

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254 Proceedings*, and 28 U.S.C. § 2253(c), the Court finds that Jervis has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **declines** to issue a certificate of appealability.

IT IS SO ORDERED.

Date: 6/13/2017

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

WVCF
Electronic Service Participant

Kelly A. Loy
OFFICE OF THE INDIANA ATTORNEY GENERAL
kelly.loy@atg.in.gov

MARK JERVIS
952861
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant